**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**REGINALD LEVAND JOHNSON**                                                                            **MOVANT**

**v.**                                                                     **No. 4:06CR63-M**

**UNITED STATES OF AMERICA**                                                          **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on remand from the Fifth Circuit Court of Appeals. The movant, Reginald Levand Johnson ("Johnson"), challenges his conviction and sentence in a motion under 28 U.S.C. § 2255. The court denied all seventeen grounds for relief Johnson sought in his petition. The Fifth Circuit affirmed the court's decision on all grounds but one: Whether counsel was ineffective for failing to inform Johnson about a government offer that Johnson plead guilty in exchange for a recommended sentence of fifteen years incarceration (with potential fines, special assessment, and post-release supervision). The court held an evidentiary hearing regarding this sole remaining issue on June 24, 2010. In light of the testimony and evidence provided at the hearing, the court will deny Johnson's final ground for § 2255 relief.

**Ineffective Assistance of Counsel**

To prevail on his claim that counsel was constitutionally ineffective, Johnson must prove that counsel's performance was deficient and that the deficiency prejudiced his legal position. Under the deficiency prong of the test, Johnson must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the

circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). Johnson "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, Johnson must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

A criminal defense attorney must inform his client of any plea offers extended by the government, and "in determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice." *Teague v. Scott*, 60 f. 3d 1167, 1170 (5th Cir. 1995).

The sole issue before the court is whether Johnson's defense attorney, Tom Levidiotis ("Levidiotis") informed Johnson about a plea agreement in which the government offered no more than fifteen years incarceration. As discussed below, the proof at the evidentiary hearing showed that Levidiotis actually informed Johnson about the government's plea offer, as well as the many pitfalls Johnson would face should he choose to take his case to trial. As such, Johnson has not carried his burden to prove that counsel was ineffective for failing to do so.

### Johnson's Unwillingness to Consider Pleading Guilty

From the moment he first spoke with Levidiotis on April 6, 2006, Johnson stated that he did not wish to plead guilty if the plea would require him to serve time in prison. Johnson had been acquitted on a murder charge in a jury trial in Detroit, Michigan, and was convinced that he

would be acquitted on the charge in the present case (felon in possession of a firearm). Johnson believed that he should take his case to trial. He felt certain he would be acquitted because he had been acquitted on murder charges in Michigan, he had not been convicted on the related state court burglary charge in the present case – and because his young accomplice was willing to testify on his behalf – taking the blame for all criminal activity and exonerating Johnson. He reiterated this belief in a May 17, 2006, letter to the Mississippi Bar Association:

> My case could be easily overturned or thrown out due to the fact that I [was] tried in the state for the said gun and could not be charged with possessing or receiving stolen property because I had no knowledge of the gun. That alone will [prove] that one could not be charged with violating Section 922(g)(1) or 924(e)(1). A man has been tried and convicted and is serving a 10-yr sentence for the possession of said item and has made statements totally releasing me from any knowledge of the items and the felony act of burglary.

Government's Exhibit 3. From the beginning, Reginald Johnson did not want to plead guilty to the charge in this case.

### Tom Levidiotis Informed Reginald Johnson About the Government's Plea Offer

First, Reginald Johnson himself (at a time *before* he decided to challenge his conviction and sentence on this basis) acknowledged that Levidiotis had discussed pleading guilty with him. Indeed, Johnson was angry that Levidiotis wanted to discuss any guilty plea at all in the case. In a letter to the Mississippi Bar Association dated May 17, 2006, Johnson complained that "there are several inmates here at this facility that have been [dis]satisfied with [Levidiotis'] method of *assisting the government obtain guilty pleas instead of fighting for acquittals*." [emphasis added]. Johnson thus conceded that Levidiotis had tried to convince him of the wisdom of pleading guilty to the charge in this case.

In addition, on direct examination Tom Levidiotis testified, based upon his contemporaneous notes (and verified by his billing records, introduced as Defendant's Exhibit D-11), that he visited Johnson on April 30, 2006, at the Lafayette County Detention Center to discuss trial preparations. Evidentiary Hearing Transcript ("Transcript"), p. 14. Based upon Levidiotis' handwritten contemporaneous notes, he discussed with Johnson the government's specific plea offer of incarceration for no more than fifteen years:

> Q [by Robert Norman]: We were talking about what you discussed with Mr. Johnson on April 30th. Is there anything you would like to add to that?
>
> A: [by Tom Levidiotis]: There is. I see a note here that I wrote. It says, "plea," question mark. It contains a mathematical notation not greater than, that is, an inverted cone or triangle with a line through it, 15; and then in red, out to the side, nope, n-o-p-e.[1]
> . . .
>
> Q: Were those notes made contemporaneously with your discussions?
>
> A: As best I can recall.
>
> Q: And was it your intention that the notes accurately reflect what you talked about?
>
> A: Yes, sir. And I –
>
> Q: Do those notes – you have told us [literally] what they show with mathematical symbols, but what do those notes connote, what do they tell you?
>
> A: They tell me, sir, that even though I don't recall looking Mr. Johnson directly in the eye and saying, "You know, you can plea for a 15-year cap in this case["] – I don't recall that. The notes tell me – specifically the request for a plea offer and the plea offer tell me that I discussed, at least with the government, such an offer.
> . . .

---

[1] Based upon this description, the note roughly resembles: "plea?  $\not> 15$     nope"

> And on this occasion, that is April 30th, as near as I can tell, I discussed it with him at that time; and he said no.
>
> Q: I want to turn it – ask it from the other direction. If you had not discussed the Government's plea offer with him on that date, would there have been any reason to make those notes in your file?
>
> A: No, sir.

Transcript, p. 16-17.

Reginald Johnson also complained to the Mississippi Bar that his attorney was more interested in *obtaining a plea deal* than taking the case to trial. Clearly, then, Levidiotis advised Johnson that negotiating *some* plea agreement would be beneficial. More, importantly, however, Tom Levidiotis testified from notes taken during a meeting with Johnson that they discussed the government's plea offer of no more than fifteen years incarceration – and that Johnson rejected the offer. Once Johnson rejected the plea agreement offered by the government, the offer was extinguished. *Frank v. Blackburn*, 646 F.2d 873 (5th Cir. 1980).

In addition, in a June 1, 2006, letter to Johnson after he was convicted, Tom Levidiotis mentioned the plea agreement again:

> Mr. Johnson, you turned down a chance to put this matter behind you with a maximum sentence of fifteen years, less good time, less time-served, and a possible reduction for participation in an appropriate drug treatment program. Indeed, it may have been possible for you to be out of prison in twelve or so years. This was always a slam-dunk case for the prosecution and I was careful to advise you of that almost every time we spoke.

Government Exhibit 9. Reginald Johnson did not write back to say that he had never heard about the plea agreement. In a July 24, 2006, letter to Johnson, Levidiotis mentioned the plea agreement again:

> There is only so much a lawyer can do in defending a truly hopeless case, such as yours. Every lawyer is powerless with respect to changing the facts of a prosecution. I told you as much from the very beginning of my representation. You had it in your mind that since the charge of burglary had been *nolle prosed* in state court that you were not guilty of having the firearm in the instant matter. I told you time and again what would happen and it happened. *I obtained for you a plea offer that was absolutely reasonable under the circumstances yet you insisted to me that you were innocent and that the true facts would vindicate you.*
>
> Of course you left out some very important parts of the true facts during your analysis. For example, you neglected to consider that no fewer than four eye-witnesses saw your truck at the scene of the burglary backed up under the carport, as well as your fleeing the scene of the burglary – never out of view of witnesses, and your fighting with the policeman who arrested you and who then discovered several firearms in the back of your truck, including the rifle you were charged with possessing.

Government Exhibit 11 (emphasis added). Again, Johnson did not contact Tom Levidiotis or anyone else to complain that Levidiotis was wrong – that Johnson had never heard of such a plea agreement. This leads the court to believe that Reginald Johnson knew about the government's plea offer and rejected it.

**Strength of the Government's Case and Lack of a Viable Defense**

Tom Levidiotis repeatedly discussed with Johnson the strength of the government's case against him, the lack of a defense the jury would believe, and the high probability of a lengthy sentence.

In a May 22, 2006, letter to Johnson, Tom Levidiotis wrote:

> What is more important to your defense is that you are not charged with burglary in the instant matter but only with being a felon, previously convicted of five violent felonies, in possession of a firearm, one Browning Model A-Bolt II, .300 Winchester Magnum rifle, which gun had previously been transported in interstate commerce. I believe our main problem, if we are to look at the motion the government has filed (Document 18, which I provided to you Friday, May 19, 2006), is that the Government says you made a statement wherein you freely admitted having the rifle in your truck. See Document 18 at page 3, first full

-6-

paragraph beginning "Following his arrest . . ." You may or may not agree with this contention but I think we are in for a little trouble because this matches perfectly with the sworn statement of Mr. Ferguson [Johnson's accomplice] you caused to be faxed to my office. All statements agree that you were not part of the burglary but all agree that you allowed Mr. Ferguson to put the gun (which is a rifle, a long, large, obvious firearm) into your trunk and then *ran from the police with it in your vehicle!*

Your contention is that your possession of the firearm was not knowing, *i.e.*, it was there but you did not know it was a gun. I reasonably fear a jury is going to have trouble with that defense. I am sorry things are not otherwise but I am stuck with the facts as I receive them. Again, in this case everyone pretty much agrees: you were there, the gun was in your vehicle, you and Mr. Ferguson agree you were not part of the burglary, you are not charged with burglary. The only question is whether you knew you possessed a large hunting rifle easily recognizable as such. You have told me you did not and I believe you. I assure you that you will have the opportunity to tell your story to the jury, if you choose. I have caused to be writted out of prison Mr. Ferguson so that, assuming he will be helpful, he may testify for you.

Government's Exhibit 6. (emphasis in original).

In a May 23, 2006, letter to Reginald Johnson, Levidiotis wrote:

I am eager to hear any particular theories you wish to share with me to prepare you for cross-examination if you desire to testify. Recall that since knowing possession of the rifle is all that need be proven that you will have to tell the jury yourself that you did not know there was a gun present in the vehicle you were driving and attempting to evade the police (which is what you have previously told me). You must be ready to explain to the jury why you attempted to flee and how it is that you did not see the .300 Magnum hunting rifle in your vehicle.

I also advise you to read carefully the jury instructions dealing with knowingly and possession with a mind toward tailoring your testimony to truthfully reflect your lack of knowledge and lack of control over the weapon.

Finally, once again I touch upon the subject of likely sentences in the event of your conviction. I shared with you that more than one of the post-*Booker* sentencings I have seen with Judge Mills, the judge in your case, resulted in the *statutory maximum* sentences. In one case this was fully two and one half times the Guideline Range. The statutory maximum in your case is a life sentence. [Should the judge get] the idea that a person convicted before him is a danger to the community he does not flinch from imposing the [maximum sentence].

> . . .
>
> I am truly sorry that I am not able to obtain a dismissal of the charges against you and that your situation seems so bleak with respect to a potential sentence if you are convicted. I promise to do my best for you but am sorely limited by the true facts and the absence of any defense at all except your purported lack of guilty knowledge.

Government's Exhibit 5.

Reviewing the findings from above: (1) At their first meeting on April 6, 2006, Reginald Levand Johnson stated that he would not accept any plea offer because he believed he would be acquitted; (2) On April 30, 2006, Tom Levidiotis informed his client, Reginald Johnson, of the government's offer of a sentence of no more than fifteen years incarceration in exchange for Johnson's plea of guilty; (3) Johnson rejected the offer during the April 30, 2006, meeting, extinguishing the offer; (4) Tom Levidiotis repeatedly advised Johnson of the perils of going to trial based upon the strength of the government's case, the absence of a viable defense, and the devastating consequences of the government's rebuttal case, should Johnson decide to put on proof in his defense; (5) Johnson, as is his right, rejected the advice of his counsel and decided to go to trial and call his accomplice as a witness; (6) The jury returned a verdict of guilty; and (7) The court imposed a sentence exceeding the fifteen years offered in the plea deal.

### Reginald Johnson's Proof at the Evidentiary Hearing

Johnson's proof consisted primarily of: (1) evidence that Tom Levidiotis did not record an entry in his CJA billing records specifically mentioning a discussion of the government's plea offer, and (2) Reginald Johnson's testimony that Levidiotis never mentioned the plea agreement.

Regarding the first item, absence of proof is not proof of absence. In other words, even if the hearing unearthed no proof that Levidiotis informed Johnson about the government's plea

offer, Levidiotis could nonetheless have informed Johnson about it.  The absence of proof of a fact does not disprove the fact.  Reginald Johnson is the movant in this proceeding under 28 U.S.C. § 2255; as such, he has the burden of proof.  *Williford v. Estelle*, 672 F.2d 552 (5th Cir. 1982).  The absence of proof, without more, does not meet this burden.  The effect of Reginald Johnson's testimony will be discussed in the section on credibility below.

**Credibility**

Initially, the court notes that Reginald Johnson currently has a strong incentive to prevaricate regarding whether Tom Levidiotis informed him of the government's plea offer.  After all, if he could prove that Levidiotis did not, then he could return to the negotiating table with the government to seek a lesser sentence than the one he is currently serving.  Levidiotis, on the other hand, had every incentive to inform Johnson about the plea offer while handling Johnson's case.  Regarding effort and efficiency, a plea would have resolved the case more quickly than a trial.  Attorneys are required under the Rules of Professional Conduct to inform clients about any offer of settlement.  Failure to do so can lead to losing one's license to practice law.  In addition, under the facts of this case, the government was going to secure a conviction – whether through plea agreement or at trial.  The proof against Johnson was overwhelming, and, as Levidiotis told him repeatedly, Johnson had no viable defense.  These facts, by themselves, lend credence to Levidiotis' version of events.

In addition, Tom Levidiotis met with Johnson several times, as well as conversing with him on the telephone.  Indeed, Levidiotis sent Johnson nine letters confirming their discussions.[2]

---

[2] Although Johnson testified that he received only one of those letters, that testimony strains belief.

In letters dated June 1, 2006, and July 24, 2006, Levidiotis mentioned that Johnson had rejected the government's plea offer. Johnson did not, however, contact Levidiotis or anyone else to let them know that he had never heard of any plea offer. This behavior would only make sense if Johnson knew about the plea offer and rejected it. Further, Tom Levidiotis took notes at his April 30, 2006, meeting with Johnson, and the notes clearly state that Levidiotis discussed the government's plea offer with Johnson, and he rejected the offer. Finally, Johnson's behavior and antics at his criminal trial, as well as his behavior during the recent evidentiary hearing do not give the court confidence in his credibility.

As detailed in Tom Levidiotis' June 1, 2006, letter, Johnson has exhibited angry, impulsive, and self-serving behavior:

> This letter follows our chat of this afternoon via telephone during which we discussed several issues.
>
> You asked me to secure your release from custody on bail. I explained to you that is just not possible. If you were not eligible for pre-trial release, that is, release from custody on bail *before* your trial and jury verdict of guilty, then how could you possibly be eligible for release *after* you were found guilty of a crime potentially punishable by life in prison. This is doubly true in light of the fact that during trial you cursed the ATF case agent in full view of the judge, audibly saying to him, "what the f*ck you looking at." You also made some sort of communication to two persons in the spectator area of the courtroom and generally caused a security crisis in court (at least one extra Marshal was called into the courtroom and every exit blocked).
>
> You may also be interested in hearing that your two friends in the courtroom apparently accosted Bob Norman, AUSA, on the street and that he found it necessary to arm himself. Additionally, there was an allegation made that your former parole officer, who testified yesterday, has received a death threat. Another potential prosecution witness complained of having received a threat. Lastly, a witness at the jail has informed the Government that you openly threatened Mr. Ferguson prior to his testifying at trial. In short, you called an awful lot of attention to yourself yesterday in court and even if every single one of those other allegations regarding you is completely false this kind of input is not

going to help you at sentencing.

Government Exhibit 9. Again, Johnson said or wrote nothing to suggest that the facts set forth in this letter were incorrect.

In addition, it was clear at trial that Johnson encouraged his much younger protégé, Mr. Ferguson, to take the stand and lie about what transpired during the burglary at issue in this case. Ferguson testified that Johnson waited in the vehicle on the street. Two witnesses, however, exposed the testimony as false. These witnesses testified that the vehicle in question was parked under the carport at the house. Trial Transcript p. 107-108, 121.

Johnson believed he could secure an acquittal through the false testimony of Mr. Ferguson (his much younger accomplice), intimidation of witnesses, and intimidation of the prosecutor. His experiences in state courts, particularly in Michigan, led him to believe he would be acquitted. He was wrong. And when his defense unraveled, as Tom Levidiotis told him it would, he turned on his attorney by accusing him of failing to notify Johnson of the plea agreement offered by the government. The evidence before the court, however, shows that Tom Levidiotis indeed notified Johnson of the plea agreement, and Johnson rejected it. The numerous letters show that Levidiotis tried again and again to explain to Johnson how risky taking the case to trial would be, but Johnson, as is his right, insisted on going forward. The case went to trial, and Johnson, who rejected a plea offer of 15 years (180 months) imprisonment, was sentenced to 235 months imprisonment, 5 years supervised release, and a special assessment of $100.00. Johnson chose to go to trial. A jury convicted him, and the court imposed an appropriate sentence. This court well remembers the performance of counsel for the defendant at trial. Mr. Levidiotis energetically and adequately represented his client in the face of overwhelming

adverse proof. And, based upon the additional proof introduced at the most recent evidentiary hearing, the court finds that Mr. Levidiotis fully – and presciently – advised his client to accept the government's plea offer. In no wise could the court find this representation to be ineffective. Indeed, Mr. Levidiotis was a credit to his profession.

Johnson's claim of ineffective assistance of counsel is therefore without merit and is denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 3rd day of September, 2010.

        **/s/ MICHAEL P. MILLS**
        **CHIEF JUDGE**
        **UNITED STATES DISTRICT COURT**
        **NORTHERN DISTRICT OF MISSISSIPPI**